25-1245, United States v. Sigala-Baray. Mr. Mohan? Thank you, Your Honor, and may it please the Court, Rajiv Mohan for the United States. I will attempt to reserve three minutes for rebuttal. This Court should reverse the District Court's grant of Mr. Sigala-Baray's suppression motion, and it can do so on two grounds that are undisputedly preserved. First, Mr. Sigala-Baray's failure to present any evidence of insurance by itself established probable cause under any reading of the failure to present provision in Section 3A of the insurance statute. Whatever immediate evidence means, the reality here is that Mr. Sigala-Baray provided no evidence of insurance. Second, that failure separately established probable cause to believe that Mr. Sigala-Baray had operated the car without insurance under Section 2 of the statute. Now, these two grounds do not implicate any of the arguments that Mr. Sigala-Baray says are waived, but I do want to address preservation from the start. And I'll start by trying to explain why the interpretation that we are advancing on appeal is the same interpretation that we advance below. In the District Court, in disputing Mr. Sigala-Baray's argument that an ongoing intent to comply with an officer's request satisfied the statute, the government made two key points. First, that this notion of an intent to comply conflicted with the statute, which, after all, required immediate evidence of insurance. And second, that the statute's structure confirmed the point by providing a mechanism for people to have their charges dismissed later on if it turns out they actually have insurance. And I think with that context, the government's reading of the statute did contain a temporal limitation. That, after all, was why an ongoing intent to comply did not satisfy the statute. And you define immediate as encompassing a temporal requirement. That's correct, Your Honor. I would define it as without delay. I do not think that necessarily means one second or five seconds. I do think that tolerates a reasonable opportunity to comply with an officer's request. But I think that a reasonable officer could conclude that that opportunity had passed here. Five minutes? I mean, and the owner of the vehicle, she was still fiddling, looking for, you know, as I interpret the record, she's still looking on her phone and see if she has some, you know, proof of insurance. And I'm not quite sure how you draw the line on immediacy, but, you know, you have a glove box that's stuffed with a lot of junk, and it takes a while to find your insurance card. Sure, Your Honor. And, you know— Legal question? Jury question? Yeah. I think it is ultimately a, you know, I suppose there is a legal question of the interpretation of the statute that exists sort of irrespective of the facts. For example, whether immediate means immediately or direct. And I think once you have that interpretation, whether the facts satisfy that standard would be a question for the jury. And for probable cause, it would simply be a question about whether a reasonable officer could find the circumstances sufficient to make out a violation. And let me try and offer a little, you know, some thoughts on where we draw the line under our interpretation, because I do think it would depend on the circumstances. I think if after five seconds someone says, I don't have any evidence, I think you would have probable cause at that point. In contrast, if after five seconds someone was still looking in the glove box, likely no probable cause. But I do actually think after, say, a minute or two of looking in the glove box, you would have probable cause. And I think if you actually watch the body camera footage here, we can throw these numbers around one minute, two minutes, five minutes. But I think if you actually look at the body cam, it is a fairly reasonable opportunity to comply with the officer's request. And certainly enough time for Ms. Sarmiento to have provided one incorrect document during that time period. Let me ask you a question about some facts that are your opposing counsel's position is that you didn't bring them up below, but I'm just curious if the district court had these facts before it. And those facts would be production of the wrong insurance card, statement that they didn't think they had the proof of insurance, and then this wrong plate for the vehicle coming to light. What was the district court's knowledge of those facts, whether they were strenuously argued or not? So the district court found each of those facts in its finding of facts section. In terms of its actual analysis, it did not specifically mention those facts in its legal analysis for probable cause, but it did understand, as I think everyone agreed, that probable cause rests on the totality of the circumstances. Okay, so any suggestion that the district court was unaware of those facts would be incorrect? That's right. And let me also try and explain why we have not waived any reliance on those facts. And I think that our theory for why probable cause exists was the same below as it is on appeal, namely that it is Mr. Segala-Perez's ultimate failure to produce any evidence of insurance. That is what establishes probable cause. And I think these additional circumstances you mentioned, Judge Carson, go to explain why a reasonable officer could conclude that that act was unlawful, particularly given the district court's understanding of the statute. And I think that that consistency in theory is what distinguishes this case from United States v. Hernandez, which is the linchpin of Mr. Segala-Perez's waiver argument on this point. In Hernandez, the government's position below was that four particular circumstances established reasonable suspicion. On appeal, it conceded that those four circumstances were not enough, but argued that reasonable suspicion existed when you threw in a fifth circumstance. And so I think the government's explanation in Hernandez for why reasonable suspicion was different below than it was on appeal. And so it did amount to a shift in theory that is not present here. I mean, your position would be that under a totality argument that these three facts, plus the just ultimate failure to not stick an insurance card in the officer's hand, cut off the time to look. That's right. Or at least a reasonable officer could so conclude. And I think that's a point I want to emphasize is that the probable cause standard does not require certainty of guilt. So even if there may be some questions on the margins of what the statute means or whether the circumstances here were sufficient, I would emphasize that probable cause is a low bar. It requires only a fair probability and requires far less than certainty of guilt. Turning to the merits, I would just make a couple of specific points on the application of the probable cause analysis here. And I do want to address this point raised in Mr. Segalabre's reply brief about whether there was any specific request made of him. And here I would point, as we did in our reply brief, to the district court's finding at page 123 of the appendix, which was that when Officer Taylor returned to the car the second time, his request was more general. And I think that's also borne out by the body camera footage. And we've conventionally submitted that as part of the appendix at document 18-2. And I would specifically point to the 5 minute 20 mark where you can see Officer Taylor engaging with Mr. Segalabre about the incorrect insurance document. And I think at one point Mr. Segalabre himself says, my bad, bro, which I think is an indication both that he understood the request to be made of him, and also an admission of failure even under the district court's interpretation. And certainly by the time of the search, about a minute had passed between that return to the car and the actual search. And I think that was enough time to establish probable cause, especially when you account for the circumstances that had occurred before. And the last point I would make in terms of the probable cause analysis is to focus a little bit on the operation provision of Section 2 of the statute, which again, the government undisputedly preserved. Below the government argued that if the video is played at trial under the statute, it would permit an inference of guilt for operation without insurance. And my point here is that if that inference is good enough for guilt at trial, it is certainly good enough for a reasonable officer to have made for purposes of probable cause. And I think that is another way that this Court should reverse the district court's grant of Mr. Segalabre's suppression motion. And if there are no further questions, I would reserve the remainder of time. Breyer. Did the record reveal if there was, in fact, insurance for this car and she just wasn't in possession of it or wasn't in the car? So when Mr. — in the briefing on the suppression motion, so after the case had been indicted and litigated, in that briefing, Mr. Segalabre produced as an attachment to, I believe, his reply, evidence that the car was, in fact, insured. So it was insured. Thank you. May it please the Court. I'm John Gervelius on behalf of Mr. Segalabre. The only relevant question before this Court is whether the district court correctly concluded that Corporal Taylor lacked probable cause to arrest my client for violating Colorado's proof of insurance statute based solely on the fact that he never produced proof of insurance during this stop. And on this question, the district court got this answer correct. Viewing the light in the most favorable to the district court's order, we see that Corporal Taylor did not have probable cause to conclude that my client or Ms. Sarmiento, for that matter, could not provide proof of insurance from somewhere inside that car, be it the glove compartment or center console or from their phones. Now, here are the relevant facts that militate against or essentially undercut the government's argument. First, Ms. Sarmiento said she had insurance and Corporal Taylor then asked her to look for it on her phone. When he asked her to look for it on her phone, she did not respond that she did not have it on her phone. She didn't say anything about that. She started to look for it. When she did start actually checking on her phone, as Corporal Taylor recommended that she do, she only had about 30 seconds or a little less than a minute of time to look on her phone before that search was cut off and she was pulled away from the car. And so there was no probable cause at the time that the search was or the search for the documentation was cut off to conclude that there was no proof of insurance available, readily available, in that car or on their phones. Now, when in that sequence did you make the statement, I don't think I do? Yes, Your Honor. First of all, of course, it's my position that the government failed to preserve these three factors. And I'll get to that in a moment. But these additional three factors in connection with the sequence of the factors you were citing, when in that sequence did that occur? So that happened, first of all, when Corporal Taylor asks, do you have proof of insurance or something to that effect? She says, you know, I don't think I do. So there's two things about that. First of all, that's an equivocal statement. That's not, no, I do not have it with me. It's, I don't think I do. That's equivocal. And it's also important, like I said, because it was borne out by the facts as they happened. Well, I don't agree with that, Your Honor. We don't know that it wasn't on her phone, for example, or in her glove compartment, in the glove box or in the center console. She never got to check all those things. We just don't know. Her search was cut short. And so that is part of my argument is why we don't have probable cause here, because she wasn't given the time to reasonably search areas where we maybe expect to see proof of insurance. I mean, how long can she look? Well, Your Honor, I would dispute the government's reading of the statute on the temporal thing, but I think that there is a sort of reasonableness standard that's probably baked into it. But I think what we would have is, I think the statute is geared towards making sure that we carry our insurance with us when we drive cars. That's kind of the point, is to be able to prove it up to the officer that we are insured. So I would think that you would develop this probable cause when it becomes clear to the officer that there's probable cause, that it's not anywhere in that vehicle readily at hand or on the phone readily at hand, because the statute does permit it to be on the phone. I don't think that it strictly imposes a temporal limitation, as the government argues. I can say that for a couple reasons, if the Court wants me to get into that. Could they say, you know, I've looked through my phone and I've looked in the glove compartment and I've looked in the console and I've looked up on the visor, but I didn't see it. Let me look under the seats. Let me look in the trunk. Let me look under the back seats. Let me look in the pockets in the back seats. I mean, do they get to search the whole car? Your Honor, I think under your hypothetical, that's probably going a little far afield, and I'm not going to dispute that, you know, a motorist can sit there and think of all these hypothetical places, like the wheel well or the spare tire. You agree, don't you, that they do have to produce the evidence of insurance? Something, either an image or a card or something like that? That's correct. Okay, so if the officer asked the driver or the passenger, do you have insurance? And they said yes, but they were never able to produce an image or a card, the yes doesn't get them anything at the end of the day. At the end of the day, that's correct. If they're ultimately unable to after given a reasonable chance to search places where we would expect it to be, sure, it might be at home, and that's a violation under 3A. I don't disagree with that. But we don't have that in this case. Let me ask you another question, and you can argue about your waiver here in a second, I want you to, let's just assume these facts are on the table. If the officer asks, can I see your insurance? And the person who is likely to be in possession of it says, I don't think I have it. And then they rifle through things for five minutes. I mean, doesn't the I don't think I have it plus five minutes of looking suggest that they're never going to find it to a reasonable officer? I don't know. I think that would certainly depend on the circumstances. If somebody is within that five minutes, clearly have searched the places where it would reasonably be, glove compartment, center console, their phone, perhaps that's true, but we don't have that in this case, Your Honor. The government keeps referring to this five minutes. But as the district court correctly determined, we don't count the full five minutes against the search. What had happened was, it was about a minute after, so within about a minute, Ms. Sarmiento produces an insurance document. The officer says, well, I'll go check this out. Let me see. And so during that next several minutes while this officer is running this, we don't expect her to be searching for the insurance document that she thinks that she's There's no sort of anything in the record that would show that she has this obligation or that she was searching for that. In fact, when the officer comes back, he then again asks her, do you have proof of insurance? So he still thinks that it might even be the case that she might have it. And it's only then that she starts looking on her phone, which is where Corporal Taylor told her to look. And so I don't think under the circumstances here that we have probable cause. This just was not a reasonable amount of time to search under these circumstances. Well, we look at this through the context of the statute. The statute says present immediate evidence. Now you say that it does not have a temporal meaning. And you say immediate means direct evidence. When we talk about direct evidence, we say direct evidence. I haven't heard anybody equate direct evidence with the expression immediate evidence. Well, Your Honor. I just don't understand your position on that. Well, Your Honor, to be clear, there's two theories in our answer brief. One is direct, or there's a proximity. And it refers to proximity. Now, the reason why immediate doesn't have the temporal quality that the government says it does, well, there's two reasons really why. One is the immediate having temporal quality is not compelled by the plain reading of the statute. And two, the plain reading of the statute actually would foreclose it. So let's start with the first. The government uses Black's Dictionary as the source for its definition. And it says that under Black's Dictionary means, you know, instant or without delay. But there's two other definitions for that, for the word. And one refers to direct, like direct causation. And one refers to temporal, or not temporal, but just physical proximity. So the plain language doesn't compel its reading. But I say that also because what we're dealing with here is an adjective. Adjectives modify the noun that follow. And under a plain reading of a statute, we have to read it in the, you know, under common rules of grammar and, you know, within the context of the statute. Now, if the government says that it takes on the form of an adverb, basically modifying present, then that would be reading it grammatically nonsensically. And we can see in common parlance, we do use the term immediate in cases where we're not even talking about temporal qualities. My immediate supervisor. Possession is immediate control. Yeah, so possession. So then it has to be your position that a reasonable officer, not this officer, but a reasonable officer is going through all these gymnastics with the word and the placement of evidence. And is it an adverb or is it an adjective? Is that reasonable to expect a reasonable officer to do that? Well, Your Honor, that's not the question before us. The question before us is whether there's probable cause under the statute. And if we have a case where the officer truly is wrangling with an ambiguous statute and that is the basis for the arrest for a mistake of law, then maybe we do fall under the Hine case. But that's not what we have here. The officer here never did make that mistake of law. So that's not really before us. This officer wasn't wrangling with the statute. This officer wasn't even going to arrest either person for violating the statute. Couldn't the statute have—couldn't we accept your position and the government's position that immediate has both a temporal aspect and a physical immediate location aspect? There's really two ways you could violate the statute. One is by taking too long and the other is by not having physical possession. Well, Your Honor, I could see where the statute in sort of the temporal sense does incorporate a reasonableness standard. I don't necessarily disagree with the government in terms of sort of that broad interpretation, although that really wasn't the interpretation I took it to mean in its briefing, which was basically immediate or instantaneous. Be that as it may, I think the district court was certainly operating under that rubric when it ruled and found that this was really not a reasonable amount of time to be given to be looking for proof of insurance. And that makes sense. I mean, you know, think of situations where maybe you borrow a friend's car or, you know, like my spouse, I don't always know where she keeps her proof of insurance in her car. I know where I keep it in mine. A friend, I might not know. So it's going to be— Maybe we have a duty under the law, and this has reminded me as I'm driving south from here, that I better have my insurance and registration close by. And you're driving your clerk's car. That's right. I better make sure they're insured. Well, certainly, Your Honor. But, you know, to the point, I mean, we do get a reasonable amount of time to search for these things. I think, you know, the government says absurd results are not factored into the plain language or the canons of statutory interpretation. That's just not true. The Snedeker case that it cites, if you read the whole paragraph from which it cites, it shows that at bottom we avoid these absurd results. Does it damage your case—I won't use any stronger language than that—if there's no waiver and if we throw facts into the mix like the wrong plate, the wrong insurance, and the I don't think I have it? No, Your Honor. I don't believe that that moves the needle. I don't think I have it. I've addressed, and certainly under the circumstances, it's equivocal. She started looking for it. Corporal Taylor then mentions the phone. She says nothing in response that I don't have it. Giving the wrong insurance, the government says, well, that's indicative of bad faith. Well, no. I mean, she made a mistake. Well, it could be. No, you're drawing an inference in her favor. And that's what we have to do on appeal, is draw the reasonable inferences in favor of the district court's ruling, Your Honor. And so the reasonable inference that we can draw there is it was an honest mistake. When Corporal Taylor comes back to the car, says, do you have proof for this car? You've provided me insurance for a different Ford with a Model E, like, Escape or something. And she was surprised. And so the inference to draw there is, oh, sorry, my mistake. And then certainly the mismatched plates, that's not before the court, of course. But that sort of has a 404B-esque flavor to it. But it doesn't bear on whether this particular car is insured. And again, she said she had insurance. And I want to point out, too, that the government only argued the mismatched plates theory below with respect to the armed and dangerous search. Did she say she had it? I think she said the car is insured. Did she at some point say, yes, I do have insurance? No, I misspoke, Your Honor. She didn't say I literally had it. She said it is insured. And so the district court, when it was actually addressing the other issue below, which was the frisk for armed and dangerous, the government argued that theory, that the mismatched plates showed that this was dangerous. And the district court downplayed that, saying, well, no, she said it was insured. She said it was her father's. And so I think that viewing that and taking the inferences in the most light favorable to the district court's ruling, no. I mean, there are plenty of permissible inferences to draw from that. Let me ask you another question. So it's not really her duty. He was the driver, right? The defendant was the driver. It's her duty insofar as she's the owner, but it's the duty once asked. She's not. She said it was her dad's. Fair enough, Your Honor. But he wasn't asked until the second time around. And that's only when his duty to provide it would have been triggered. And that actually comes from the Tunn case itself to UN. Your Honors, I see I'm almost out of time. I just respectfully ask that this court affirm. Thank you, counsel. Let me ask you a question right off the bat here, following up on our last deal. When he was asked the second time around if he could produce proof of insurance, what was the answer? The defendant. So the second time, Officer Taylor, I believe, asked, one moment. Officer Taylor said, do you have any insurance for the right car? And because this is for an F-150, not the expedition. Mr. Armiento started to look on her phone. Mr. Officer Taylor showed the incorrect document to Mr. Segala-Buray and is sort of explaining to him why it's wrong. And at one point, Mr. Segala-Buray says, my bad, bro. So I don't think he necessarily sort of directly said whether or not he had insurance. But I do think a reasonable officer could interpret the my bad, bro, as some sort of concession that there had been a failure already. Or at least a non-answer. Correct. Certainly no, no insistence that he did have proof of insurance. I want to make a couple of points about the interpretation. And I would point out Colorado's model jury instructions, which I think support a temporal limit. And as I understand Mr. Segala-Buray's argument, I think he sort of reads some requirement in the statute that an officer has to allow an owner or operator to sort of exhaust their search. And I think that doesn't make sense, one, in a world where lots of people have cell phones and in the context of a statute that expressly permits proof of evidence by cell phone. And in conjunction with a provision that says that if you don't produce evidence, you can have the charges later dismissed if you actually have it. And what I think that demonstrates is that you don't have an unlimited time to be able to come up with evidence. Otherwise, there would be no need to have this mechanism to have the charges dismissed. I would also point out that I don't think the district court actually adopted Mr. Segala-Buray's interpretation that you just heard. The district court's point was more about failure, whether the act was deficient or unsuccessful or fell short of achieving something hoped for. And I would submit that the provision of the incorrect document by itself amounted to failure under the district court's definition. And that, regardless of what happened next, was enough to reverse. And unless the court has further questions, that's what I would ask the court to do. Thank you, counsel. Counsel are excused when the case is submitted.